GREGORY D. WOLFLICK (SBN 108699)
WOLFLICK & SIMPSON
130 North Brand Blvd., Suite 410
Glendale, California 91203
818.243.8300
818.243.0122  - Facsimile

DONALD W. STEWART (*Pro Hac Vice* application pending)
STEWART & STEWART, P.C.
P.O. Box 2274
Anniston, Alabama 36202
(256) 237-9311
(256) 237-0713 – Facsimile

J. PAUL LYNN (*Pro Hac Vice* application pending)
STEWART & STEWART, P.C.
1826 3rd Avenue North, Suite 300
Bessemer, AL 35020
(205) 425-1166
(205) 425-5959 - Facsimile

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY ROMINE MINKLER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiffs | ) |
| v. | ) ) ) ) |
| APPLE, INC., | ) ) ) |
| Defendant. | ) ) ) ) ) ) ) ) |

**JURY DEMAND**

1. Unfair Competition, California Business and Professions Code § 17200, *et seq.*

2. Violations of False and Misleading Advertising Law, California Business and Professions Code § 17500, *et seq.*

3. Violations of the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*

4. Breach of Express Warranty

5. Breach of Implied Warranty

6. Violation of the Magnuson-Moss Warranty Act

7. Negligent Misrepresentation

1

**CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 3

II. JURISDICTION AND VENUE ........................................................................ 5

III. THE PARTIES.................................................................................................. 6

    A. Plaintiff .................................................................................................... 6

    B. Defendant Apple, Inc. .............................................................................. 7

IV. FACTUAL ALLEGATIONS ........................................................................... 7

    A. Background of Apple's Product Line........................................................ 7

    B. Apple's defection from Google launched a disaster for Apple's Maps……................9

    C. Apple's Mapping Application is clearly Defective....................................11

    D. Apple Has Failed To Honor Its Warranties .............................................15

    E. Apple's Misrepresentations......................................................................16

V. CHOICE OF LAW ALLEGATIONS ...............................................................17

VI. CLASS ACTION ALLEGATIONS.................................................................17

VII. CAUSES OF ACTION ..................................................................................20

VIII. DEMAND FOR RELIEF..............................................................................31

Plaintiff Nancy Romine Minkler ("Plaintiff"), brings this action on behalf of herself and on behalf of all others similarly situated in the United States against Defendant APPLE, INC. (hereinafter "Apple" or "Defendant"). Plaintiff's allegations are made on information and belief except as to allegations regarding herself which are based on personal knowledge. Plaintiff alleges as follows:

## I.   <u>INTRODUCTION</u>

1.      This is a class action brought on behalf of the Plaintiff and other purchasers of the Apple iPhone, iPod touch and/or iPad mobile devices (the "Apple Devices") which utilize Apple's iOS operating systems 6.0, 6.1.3, 7.0, or 7.0.3.

2.      One such App is Apple's "Maps" App. The Maps application has been featured on the iPhone operating system since the release of the first-generation iPhone on June 29, 2007, and was powered by Google Maps from then until September 19, 2012. A new version was announced by Scott Forstall in a keynote address at Apple's Worldwide Developers Conference on June 11, 2012.

3.      The new version would use Apple's own mapping system with data provided by a number of providers instead of Google Maps, mainly through Dutch manufacturer of navigation systems TomTom. This was a strategic move by Apple to compete with Google's Android operating system in mapping.

4.      Upon release of Apple's iOS 6 mobile operating system, it was met by considerable criticism. Apple issued a statement saying that it is working hard to improve the technology. "We launched this new map service knowing that it is a major initiative and we are just getting started with it," said Trudy Muller, an Apple spokeswoman. "We are continuously improving it, and as Maps is a cloud-based solution, the more people use it, the better it will get.

We're also working with developers to integrate some of the amazing transit apps in the App Store into iOS Maps. We appreciate all of the customer feedback and are working hard to make the customer experience even better."[1]

5.     In January 2012, Apple reported its best quarterly earnings ever, with 53% of its revenue coming from the sale of 37 million iPhones, at an average selling price of nearly $660. As such, in the fourth quarter of 2012, Apple's revenue from iPhone sales was $24.4 billion.

6.     Today, Apple boasts that the App Store has over 700,000 apps for iPhone and iPod touch and 275,000 apps for the iPad. On January 7, 2013, Apple announced that, since 2008, customers have downloaded over 40 billion apps – nearly 20 billion in 2012 alone. *See* January 7, 2012 press release. (available at www.apple.com).

7.     Apple heavily encourages purchasers to download apps. For example, since the inception of the App Store, Apple has told consumers "[t]he more apps you download, the more you realize there's almost no limit to what your iPhone can do" and has made similar representations regarding the iPad and the iPod touch.

8.     Not surprisingly, the availability of apps has been credited with propelling the popularity of the Apple Devices. Apps are not only an integral part of the Apple Devices themselves, but are the key feature that has differentiated Apple Devices from similar products.

9.     The App Store is under Apple's exclusive domain and the Company has ultimate control of what apps are available for purchase or download by consumers. Furthermore, Apple has designed the Apple Devices to accept apps only from the App Store.

---

[1] September, 2012 statement by Trudy Muller of Apple.

10.     Apple has a checkered history when it comes to delivering services that rely heavily on the Internet. Siri, its voice-activated virtual assistant, was criticized since it came out in 2011 for both outages and its frequent misunderstandings of user commands.

11.     According to a New York Times article, "[a]t least Apple signaled that Siri was a work-in-progress by describing it as being in beta. The maps service carries no such disclaimer and is likely being viewed even more critically than Siri because maps have become such an essential tool for smartphone users."[2] The article stated, [t]he service was blasted for everything from inaccuracies in its location data for businesses to the sometimes distorted imagery of landmarks." *Id.*

## II.     <u>JURISDICTION AND VENUE</u>

12.     This Court has jurisdiction over the instant matter pursuant 28 U.S.C. §1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, which vests original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant. The amount-in-controversy and diverse-citizenship requirements of CAFA are satisfied in this case.

13.     Apple sells the iPhone and iPad nationwide and, in light of recent press and other reports of widespread issues with Apple's defective map applications, coupled with the enormous sales of Apple iPhones and iPads and given the damages caused by the defective product, Plaintiff believes, and therefore alleges, that the aggregate amount in controversy well exceeds $5 million.

---

[2] http://bits.blogs.nytimes.com/2012/09/20/apple-on-its-ios-6-maps-things-can-only-get-better/?_r=0

14.     Apple, a corporation doing business nationwide, transacts substantial business in this judicial district and is otherwise subject to personal jurisdiction here. Accordingly, Apple is deemed to reside here, and venue is appropriate in this Court under 28 U.S.C. § 1391(b) and (c). In addition, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, underscoring the propriety of this choice of this venue. 28 U.S.C. § 1391(b).

## III.    THE PARTIES

### A.    Plaintiff

15.     Plaintiff Nancy Romine Minkler ("Minkler") is a resident of California. Minkler has been a devoted Apple customer since 2007. Minkler currently owns an iPhone 5 and an iPad.

16.     Prior to upgrading to the iOS 6 and 7, Plaintiff Minkler saw various marketing materials describing the innovation, accuracy, and versatility of Apple's Map App, including statements made by Scott Forstall at the WWDC in June of 2012 touting the new iOS 6 as a "major initiative." Prior to the release of the new Maps app, commentators had focused on the new 3D or Flyover facility and it was widely praised as outclassing Google's long standing but weak equivalent.

17.     Just prior to the release of Apple's iPhone 5 on September 21, 2012, Minkler visited the Apple website which touted the "non-stop work" of Apple that led to "a number of improvements to Maps."[3] These representations about the new and improved Apple Maps influenced her decision to purchase the iPhone 5.

18.     Approximately two days after purchasing the iPhone 5, during normal and expected use of the product, the Maps Application improperly labeled numerous streets, buildings and landmarks, as well as led her to several incorrect locations.

---

[3] http://en.wikipedia.org/wiki/Maps_(application)

19. Had any of these marketing materials or advertisements disclosed that the iPhone 5 Map was defective she would not have purchased it, and she certainly would not have paid as much for it.

**B. Defendant Apple Inc.**

20. Defendant Apple, Inc. (formerly known as Apple Computer, Inc. and referred to herein as "Apple" or "Defendant") is a publicly traded company, incorporated in California, with its worldwide corporate headquarters and principal place of business in Cupertino, California. Apple designs, manufactures, markets, distributes, and sells personal computers, laptops, consumer electronics, networking and connectivity products, computer software, applications, and Internet products and technologies. Apple sells its products, including the iPhone 5, over the Internet and at its numerous retail stores, including 48 retail stores in California.

**IV. FACTUAL ALLEGATIONS**

**A. Background of Apple's Product Line**

21. Apple designs both the hardware component of the Apple Devices as well as the operating system (the iOS) that runs each device

22. The iPhone is the most popular of the three devices. For example, in 2011 and 2012, Apple sold 72 million and 125 million iPhones respectively. Apple sold approximately 11 million and 8 million iPods touches and 32 million and 58 million iPads in the same time period.

23. The iPod touch is a portable digital music and media player based on Apple's proprietary iOS and includes a multi-touch interface and the App Store.

24. The iPhone combines a mobile phone, an iPod touch, and an internet communication device into a single hand-held product. The iPhone is therefore more than simply

a phone and Apple's marketing of the iPhone has focused not on its ability to make phone calls, but on the availability and utility of third-party apps. Indeed, since the launch of the App Store, Apple's Annual Reports to shareholders have cautioned that "[t]he Company believes decisions by customers to purchase its hardware products depend in part on the availability of third-party software applications and services for the Company's products…with respect to iOS devices, the Company relies on the continued availability and development of compelling and innovative software applications, which are distributed through a single distribution channel, the App Store."

25.      The iPad is a multi-purpose mobile device. Like the iPhone and the iPod touch, the iPad is based on the Company's multi-touch technology and comes installed with the App Store. The iPhone, iPod touch and the iPad share many of the same apps.

26.      The price of each Apple Device depends on the available memory on the device measured in gigabytes (GB). Apple sells a locked iPhone starting at $199 for a 16GB phone, $299 for a 32GB phone, and $399 for a 64GB phone.

27.      Thus, Apple sells additional memory at a premium, telling consumers, "[t]he more gigabytes you have, the more content you can store on your iPhone – apps, photos, HD videos, music, movies and more."

28.      Similarly, Apple charges a premium for additional space on the iPad: $499 for the 16GB iPad, $599 for the 32GB iPad, and $699 for the 64GB iPad. As with the iPhone, Apple encourages consumers to purchase an iPad with a larger capacity.

29.      Finally, the iPod touch is priced at $199 for 16GB, $299 for 32GB and $399 for 64GB.

30. Thus, it appears that, after the first 16GB of memory, every additional 16GB of memory space, is worth approximately $100. Every app takes up a portion of the available memory on the Apple Device depending on the size of the app.

**B. Apple's defection from Google launched a disaster for Apple's Maps**.

31. Upon the release of the new version on September 19, 2012, many users and commentators were critical of the app for a variety of reasons ranging but not limited to improper labeling of places to unmapped roads.[4] A legion of technology writers classified Apple Maps as the number one tech screw up of 2012. The Apple Maps launch has been described as an "apocalyptic horror show."[5]

32. Users complained about the errors it contained. This included showing the wrong location of the Apple Store in Sydney, Australia, marking an entire city as a hospital, misclassifying a nursery as an airport, and identifying the nearest gas station to be as far as 76 miles away from the user's location.[6] 3D views appearing in Maps were also completely distorted in most cases, with iconic constructions like the Brooklyn Bridge seeming to be collapsed or impossibly built.[7]

33. In response to the criticism, Apple issued a statement, saying the company is "continuously improving" Maps and they "appreciate all of the customer feedback."[8] On September 28, 2012, Apple CEO Tim Cook posted a letter on the Apple website apologizing for

---

[4] Allsopp, Ashleigh (September 1, 2012). "Apple's iOS 6 Maps app fails to impress, users want Google Maps back".Macworld. Retrieved September 21, 2012.

[5] http://gizmodo.com/5967025/the-biggest-tech-screw+ups-of-the-year/

[6] "17 People Apple Maps Has Already Horribly Misled".Gizmodo. September 20, 2012. Retrieved September 23, 2012.

[7] Levine, Eitan (September 2012). "Apple iOS 6 Maps Fails". Heavy. Retrieved June 6, 2013.

[8] Wingfield, Nick (September 20, 2012). "Apple on Its iOS 6 Maps: Things Can Only Get Better". *The New York Times*. Retrieved September 25, 2012.

Maps and suggesting that customer use ***non-Apple*** map applications or websites while Apple works to improve Maps.[9] The letter stated:

> To our customers,
>
> At Apple, we strive to make world-class products that deliver the best experience possible to our customers. With the launch of our new Maps last week, we fell short on this commitment. We are extremely sorry for the frustration this has caused our customers and we are doing everything we can to make Maps better.
>
> We launched Maps initially with the first version of iOS. As time progressed, we wanted to provide our customers with even better Maps including features such as turn-by-turn directions, voice integration, Flyover and vector-based maps. In order to do this, we had to create a new version of Maps from the ground up.
>
> There are already more than 100 million iOS devices using the new Apple Maps, with more and more joining us every day. In just over a week, iOS users with the new Maps have already searched for nearly half a billion locations. The more our customers use our Maps the better it will get and we greatly appreciate all of the feedback we have received from you.
>
> While we're improving Maps, you can try alternatives by downloading map apps from the App Store like Bing, MapQuest and Waze, or use Google or Nokia maps by going to their websites and creating an icon on your home screen to their web app.
>
> Everything we do at Apple is aimed at making our products the best in the world. We know that you expect that from us, and we will keep working non-stop until Maps lives up to the same incredibly high standard.
>
> Tim Cook
>
> Apple's CEO

September 28, 2012 Letter from Apple CEO, Tim Cook.

34.     In October 2012, Scott Forstall, Senior Vice President of iOS software and the executive responsible for Maps (or "directly responsible individual," in Apple jargon), was

---

[9]

removed from his position.[10] According to Adam Lashinsky of *Fortune*, Forstall sealed his fate when he refused to sign the apology for Maps.[11]

35.    Apple Maps was named one of the Top 10 technology 'fails' of 2012 by CNN in December 2012.[12]

**C.    Apple's Mapping Application is clearly defecti**ve.

36.    Last month, the International Business Times reported, "Alaska's Fairbanks International Airport  closed one of its main access routes for aircrafts due to a major flaw with the Apple Maps navigation application, which is available for iOS 6 and iOS 7 users."[13] Alaska drivers attempting to get turn-by-turn directions to Fairbanks International Airport with Apple Maps are directed across one of the runways, straight to the main terminal. *Id.* According to the Alaska Dispatch, several drivers have been spotted driving along the taxiway and crossing the runway to reach the airport ramp side of the passenger terminal. *Id.*

37.    The International Business Times printed a picture of the Apple Map at issue, which is below:

---

[10]   Rodriguez, Salvador (October 29, 2012). "Apple ousts Scott Forstall, executive in charge of Maps and Siri". Los Angeles Times. Retrieved October 29, 2012. "Apple's head of mobile software, Scott Forstall, is leaving the company following the release of Apple Maps and Siri, two major projects that were considered flops for the technology giant."; see also, "Apple Announces Changes to Increase Collaboration Across Hardware, Software & Services". Apple Inc. October 29, 2012. Retrieved October 29, 2012.

[11]   Lashinsky, Adam (October 29, 2012). "Inside Apple's major shakeup". Fortune. Retrieved December 10, 2012.

[12]   http://www.cnn.com/2012/12/28/tech/web/tech-fails-2012/index.html?hpt=hp_bn5
[13]   http://www.ibtimes.com/apple-maps-fails-again-alaska-drivers-directed-airport-taxiway-no-fix-sight-1410830



38.    The Huffington Post published an article titled "The 19 Most Ridiculous Apple Map Fails"[14] and the following are notables:



---

[14] http://www.huffingtonpost.com/2012/09/20/apple-map-fails-ios-6-maps_n_1901599.html





Google Maps on iOS 5          Apple Maps on iOS 6

Hybrid satellite and map view     Hybrid satellite and map view

**D.      Apple Has Failed To Honor Its Warranties**

39.      Normal and reasonable use of the product, including the use advertised by Apple, resulted in the dissemination of potentially dangerous information.

40.      Apple is, and was, aware of the defects in Apple Maps. As reported by the media,

Apple was aware of this design flaw and was quietly working to address the defective app on every iPhone 5.

41.     Meanwhile, Apple has failed to address, much less resolve, the important issue of how to remedy the Mapping Application.

42.     Ultimately, Apple has charged consumers to repair or replace defective applications or left them no option but to seek repair from a less-expensive third-party repair provider, thereby invalidating the warranty issued by Apple going forward. No warning of the iPhone 5's map app was given prior to the sale of millions of the iPhone 5.

43.     Apple's refusal to cure this problem breaches its one year warranty, which "warrants this Apple-branded hardware product against defects in materials and workmanship under normal use for a period of one (1) year from the date of retail purchase by the original end user purchaser ('Warranty Period')."

### E.     Apple's Misrepresentations

44.     Plaintiff and members of the Class relied upon Apple's representations with respect to the cost of their Apple Devices when making their purchasing decisions, and the omission of material facts to the contrary was an important factor in their decision.

45.     For example, Plaintiff Minkler viewed the Apple website and saw in-store advertisements prior to purchasing her iPhone. She chose to upgrade to the iPhone 5 based on representations regarding iOS 6, a substantial part of which was the defective Apple Maps. The apps were an essential part of the device for Plaintiff Minkler. Plaintiff Minkler travels frequently in Los Angeles and expected her Apple Maps App to perform as intended. If Plaintiff

Minkler knew that Apple Maps would be critically flawed she would not have paid as much for the iPhone, or would not have purchased the iPhone.

46.     Plaintiff and members of the Class would not have purchased their Apple Devices and/or would not have paid as much for these devices if they knew the true nature of the Apple Devices.

## V.     CHOICE OF LAW ALLEGATIONS

47.     Apple is headquartered in Cupertino, California.

48.     Apple does substantial business in California, with a significant portion of the proposed Nationwide Class located in California.

49.      Plaintiffs injuries were caused by Apple's wrongful conduct in false advertising that originated in California. Apple's misleading marketing, promotional activities and literature were coordinated at, emanate from and are developed at its California headquarters, and all critical decisions regarding marketing and advertising were made within the State of California.

## VI.    CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(1), (b)(2) and (b)(3). The proposed class is both ascertainable and shares a well-defined community of interest in common questions of law and fact. Furthermore, this action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements. The Class is defined as follows:

> **All persons and entities who purchased in the United States an Apple Device for their own use and not for resale, which uses utilizes Apple's iOS operating systems 6.0, 6.1.3, 7.0, or 7.0.3. Excluded from the Class are (1) Defendant; (2) any entity in which Defendant has a controlling interest; (3) Defendant's officers, directors, and employees; (4) Defendant's legal**

**representatives, successors, and assigns; and (5) the Court to which this case is assigned.**

51.    Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendant. However, Plaintiff believes that Class members are sufficiently numerous, most likely in the millions of purchasers, and geographically dispersed throughout the nation, and that joinder of all Class members is impracticable. The information as to the identity of the Class members can be substantially determined from records maintained by Defendant and its agents such as sales records, registration records, warranty agreements, warranty claim records, and public notification.

52.    Plaintiff's claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiff is an iPhone and iPad owner and by asserting her claims, she will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of Apple as alleged herein, and the relief sought is common to the Class.

53.    The common legal and factual questions which do not vary from Class member to Class member as to the Apple Devices, and which may be determined without reference to individual circumstances of any Class member include, but are not limited to, the following:

a.    Whether the Apple Maps App contains a design defect;

b.    Whether the Apple Maps App is a manufacturing defect;

c.    Whether the Apple Devices are susceptible to malfunction as a result of such defect(s);

d.    Whether Apple has breached its express written warranty;

e.    Whether Apple has breached an express written warranty based on representations it made in marketing materials;

f.    Whether Apple has breached the implied warranty of merchantability;

g.      Whether Apple's marketing and descriptions of the Apple Devices were likely to deceive a reasonable consumer;

h.      Whether Apple knew or should have known that the Apple Devices were vulnerable to malfunctions;

i.      Whether Apple had a duty to Plaintiff and the Class to disclose the true nature of the Apple Devices' mapping defects;

j.      Whether the facts withheld by Apple from Plaintiff and the Class would be material to a reasonable person;

k.      Whether Apple engaged in unfair competition when it represented that the Apple Devices and Map Apps had characteristics that it does not actually have;

l.      Whether the Apple Devices fail to perform in accordance with the reasonable expectations of ordinary consumers;

m.      Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages; and

n.      Whether Apple should be ordered to make full restitution to Plaintiff and members of the Class, as well as injunctive relief.

54.    These common questions and others predominate over questions, if any, that affect only individual members of the Class.

55.    The claims of the Plaintiff are typical of the claims of the Class. There are no material conflicts with any other member of the Class that would make class certification inappropriate. Plaintiff and his counsel will fairly and adequately represent the interests of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions, including complex cases and consumer actions, and Plaintiff will prosecute this action vigorously.

56.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

57.     Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.

58.     Injunctive relief is appropriate as to the Class as a whole because Defendant has acted or refused to act on grounds generally applicable to the Class.

59.     Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may not otherwise warrant individual litigation.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Breach of Express Warranty In Violation Of
### Cal. Comm. Code § 2313)

Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

60.     Defendant Apple issued written warranties to Plaintiff and the Class wherein Defendant warranted that its Apple Devices were free of defects in materials and workmanship.

61.     In addition, Plaintiff was exposed to representations made by Apple in its marketing materials regarding iOS 6 and Apple Maps, e.g., keynote address from Apple Executive touting the new iOS 6 as a "major initiative" and persistent encouragement by Apple to stick with its products because "the more our customers use our Maps the better it will get." September 28, 2012 Letter from Apple CEO, Tim Cook.

62.     In fact, the Apple Devices at issue are not fit for its advertised purpose of providing a product that contains a Map function which accurately directs the user to the desired destination, accurately depicts landmarks, etc. Despite CEO Cook's September 28, 2012 letter promising improvements, the Huffington Post and several other media outlets reported just weeks ago that Apple Maps directed users across an airport runway.[15]

63.     Apple has had actual notice of the Apple Maps defects by virtue of the media coverage of the problems (e.g. – The New York Times, Fortune, Wall Street Journal), including the hundreds of messages posted on technology websites such as MarketWatch.com, and Gizmodo.com, and by virtue of the filing of this lawsuit. Additionally, as unsophisticated consumers, Plaintiff and the Class are relieved of any notice requirement, and Apple, who has superior knowledge of its technology, is estopped from asserting lack of notice as a defense. In addition, on September 26, 2013, Plaintiffs' counsel provided separate written notice of the faulty Apple Maps to Apple, Inc.

---

[15] http://www.huffingtonpost.com/2013/09/25/apple-maps-bad_n_3990340.html

64.     Defendant has breached its warranty obligations by not agreeing to refund the purchase price of the Apple Devices to dissatisfied customers and not agreeing to replace without charge all flawed Apple Maps applications.

65.     Defendant's breach of the warranty was a substantial factor in causing Plaintiff and the Class to suffer economic losses and other general, consequential and specific damages, according to proof.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Breach of Implied Warranty In Violation Of
### Cal. Comm. Code § 2314)

66.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

67.     Defendant had direct dealings with Plaintiff and the Class through its vast marketing efforts. As a result of their direct dealings with Defendant, Plaintiff and the Class purchased Apple Devices from Apple and/or Apple-authorized retailers. Notwithstanding this, privity is not required because Plaintiff and the Class are the intended beneficiaries of Defendant's implied warranties.

68.     By operation of Cal. Com. Code § 2314, Defendant impliedly warranted that its devices are merchantable, fit for its ordinary purpose, and free of defects.

69.     In fact, the devices are not in merchantable condition because the Map application is defective as described above. The iPhone 4 cannot perform its ordinary purpose because Apple Maps does not accurately direct the user to the desired destination, does not accurately depict landmarks, etc., when used in the ordinary course and for the ordinary purpose for which devices were sold.

70.     Defendant breached the warranties by undertaking the wrongful acts herein alleged. The Apple Devices and, specifically, the pre-installed Apple Maps are substantially likely to malfunction before the end of their useful life.

71.     As a result of Defendant's breach of the warranty, Plaintiff and the Class have suffered economic losses and other general, consequential and specific damages, including the amount paid for their defective Apple Devices, according to proof.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## THIRD CAUSE OF ACTION

### (Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301 et seq)

72.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

73.     Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Act.

74.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act.

75.     The Apple Devices are a "consumer product" within the meaning of the Magnuson-Moss Act.

76.     Defendant's written affirmations of fact, promises and/or descriptions as alleged herein are each a "written warranty" as to the Apple Maps functionality and accurate performance and/or there exists an implied warranty for the sale of such products within the meaning of the Magnuson-Moss Act.

77.     For the reasons detailed above, Defendant breached these express and implied warranties, as the Apple Devices did not perform as Defendant represented or were not fit for their ordinary use. Defendant Apple has refused to remedy such breaches, and its conduct caused damages to Plaintiff and member of the Class.

78.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

79.     As Defendant has refused all previous requests, resorting to any informal dispute procedure and/or affording Defendant another opportunity to cure these breaches of warranties is unnecessary and/or futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances. Any requirement under the Magnuson-Moss Act or otherwise that Plaintiff resorts to any informal dispute settlement procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranties described above is excused and/or has been satisfied.

80.     Plaintiff seeks to revoke her acceptance of the defective Apple Devices, or, in the alternative, seek all damages, including diminution in value of her Apple Devices in an amount to be proven at trial. Class members are entitled to recover damages, specific performance, costs, attorneys' fees, rescission, and/or other relief as is deemed appropriate.

## FOURTH CAUSE OF ACTION

### (Violations of Cal. Civ. Code § 1750 *et seq.*)

Plaintiff incorporates the foregoing allegations as if fully set forth herein.

81.     In violation of Civil Code, §1750, et seq., Apple has engaged and is engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiff, and such transactions are intended to and have resulted in sales of any merchandise.

82.     In violation of the CLRA, Apple has engaged, and is engaging, in unfair and deceptive acts and practices in the course of transaction with Plaintiff, and such transactions are intended to and have resulted in the sale of goods to consumers.

83.     Plaintiff and members of the Class are consumers as that term is used in the CLRA Act because they sought or acquired Apple's goods (the Apple Devices) for personal, family, or household purposes. Apple's past and ongoing acts and practices include but are not limited to: Apple's representations that its goods were of a particular standard, quality, and grade, when in fact, they were of another, in violation of Civil Code, §1770(a)(7).

84.     Specifically, as described herein, Apple has made the following representations, expressly or by implication to Plaintiff and other members of the Class about the Apple Devices: (i) that Apple designed the Apple Devices to safely and reliably download and update its apps, (ii) that the App Store does not permit apps that violate its developer guidelines to be sold or to be made available for free through the App Store, (iii) that "Apple takes precautions – including administrative, technical, and physical measures – to safeguard [purchaser's] personal safety," and, (iv) that Apple Maps will improve as more consumers use it.

85.     These representations were materially misleading.

86.     Plaintiff and members of the Class would not have purchased the Apple Devices and/or would not have paid as much for them if Apple disclosed that the above representations were false and if there were aware that Apple Maps would not provide public transit directions, would mislabel restaurants, landmarks, streets, etc., and provide inaccurate directions.

87.     Apple's violations of the CLRA have caused damage to Plaintiff and the other Class members and threaten additional injury if the violations continue. This damage includes the injuries and losses set forth above.

88.     Under §1782 of the CLRA, Apple has received notice in writing by certified mail of the particular violations of §1770 of the CLRA from Plaintiff on behalf of all Class members, demanding Defendant offer to resolve the problems associated with the actions detailed above and give notice to all affected consumers of the intent to so act.

89.     Thirty days have passed since Plaintiff sent the CLRA letter, registered mail return receipt requested, and Apple has failed to take the actions required by the CLRA on behalf of all affected consumers. Plaintiff and the Class are therefore entitled to all forms of relief provided under § 1780 of the CLRA.

90.     Based on its knowledge or reckless disregard of the facts as detailed herein, Apple was guilty of acting with malice, oppression or fraud.

### FIFTH CAUSE OF ACTION

### (Violations of Cal. Bus. & Prof. Code § 17500 *et seq.*)

Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

91.     Plaintiff and members of the Class have suffered injury in fact and have lost money or property as a result of Apple's violation of California Business & Professions Code §17500, et seq.

92.     Apple's acts and practices as described herein have deceived and/or are likely to deceive members of the Class and the public. Apple has repeatedly advertised that its products were safe and secure. Apple has furthered assured consumers that it closely monitors the apps

available in the App Store. Instead, Apple has left its customers vulnerable to all hazards which result from inaccurate directions, and flawed maps.

93.     By its actions, Apple is disseminating uniform advertising concerning its products and services, which by its nature is unfair, deceptive, untrue, or misleading within the meaning of California Business & Professions Code §17500, et seq. Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

94.     The above-described false, misleading, and deceptive advertising Apple disseminated continues to have a likelihood to deceive in that Apple has failed to disclose that its mapping application does not provide public transit directions, mislabels restaurants, landmarks, streets, etc., and provides inaccurate directions.

95.     In making and disseminating the statements alleged herein, Apple should have known its advertisements were untrue and misleading in violation of California Business & Professions Code §17500, et seq. Plaintiff and members of the Class based their decisions to purchase the Apple Device in substantial part on Apple's misrepresentations and omitted material facts. The revenues to Apple attributable to products sold in those false and misleading advertisements amount to millions of dollars. Plaintiff and the Class were injured in fact and lost money or property as a result.

96.     The misrepresentations and non-disclosures by Apple of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code § 17500, et seq.

97.     As a result of Apple's wrongful conduct, Plaintiff and the Class request that this Court enjoin Apple from continuing to violate California Business & Professions Code § 17500, et seq.

## SIXTH CAUSE OF ACTION

### (Violations of Cal. Bus. & Prof. Code § 17200 *et seq.*)

Plaintiff incorporates the foregoing allegations as if fully set forth herein.

98.     In violation of California Business and Professions Code, §17200 et seq., ("Unfair Competition Law"). Apple's conduct in this regard is ongoing and includes, but is not limited to, statements made by Apple and Apple's omissions, including as set forth above.

99.     Plaintiff, on behalf of herself and on behalf of each member of the Class, seeks restitution, injunctive relief, and other relief allowed under the Unfair Competition Law.

100.    Apple's business acts and practices are unlawful, in part, because they violate California Business and Professional Code, §1750, et seq., which prohibits false advertising, in that they were untrue and misleading statements relating to Apple's provision of goods and with the intent to induce consumers to enter into obligations relating to such goods, and regarding which statements Apple knew, or which by exercising reasonable care should have known, were untrue and misleading.

101.    Apple's business acts and practices are also unlawful in that, as set forth herein, they violate the Consumer Legal Remedies Act, California Civil Code, §1750, et seq.

102.    Plaintiff reserves the right to identify additional provisions of the law violated by Apple as further investigation and discovery warrants.

103.    Apple is therefore in violation of the unlawful prong of the Unfair Competition Law.

104.    Apple's business acts and practices are also unfair because they have caused harm and injury-in-fact to Plaintiff and members of the Class and for which Apple has no justification

other than to increase, beyond what Apple would have otherwise realized, its market share and revenue from sale of the Apple Devices.

105.    Apple's conduct lacks reasonable and legitimate justification in that it has benefited from such conduct and practices while Plaintiff and members of the Class have been misled as to the nature and integrity of the Apple Devices and have lost money, including the purchase price of the Apple Device and/or the difference of the inflated price and the price Apple should have charged for a product that fully disclosed the true nature of the Apple Devices.

106.    Apple's conduct offends California public policy, the Consumer Legal Remedies Act, and/or the state constitutional right of privacy.

107.    In addition, Apple's modus operandi constitutes a sharp practice in that Apple knew and should have known that consumers care about the accuracy of maps, but are unlikely to be aware or/and able to detect the means by which Apple and/or its licensors were conducting themselves in a manner adverse to its commitments and its users' interests. Apple is therefore in violation of the unfair prong of the Unfair Competition Law.

108.    Apple's acts and practices were also fraudulent within the meaning of the UCL because they were likely to mislead members of the public.

109.    While Apple represented at all times that, the Apple Devices were safe and secure; in actuality, the Maps application guided Plaintiffs to unknown locations. Apple did not inform purchasers, like Plaintiff, that their Apple Devices may be vulnerable to mapping fallacies such as: mislabeled restaurants, landmarks, streets, etc., and publishing inaccurate directions, but instead, represented at all relevant times that "Apple takes precautions – including administrative, technical, and physical measures – to safeguard [purchaser's] personal safety."

110.    By engaging in the above-described acts and practices, Apple has committed one or more acts of unfair competition within the meaning of the UCL. Plaintiffs and members of the Class have suffered an injury-in-fact and have lost money and property, including, but not limited to, the expected utility and performance of their Apple Devices, the purchase price of their Apple Devices, and/or the difference between the price Class members paid and the actual worth of the product has Apple disclosed the true nature of the Apple Devices.

111.    Apple had a duty to disclose the material content and security characteristics of the Apple Devices and their operations because (i) it knew or should have known about these characteristics at the time that Plaintiff and other members of the Class purchased their Apple Devices because Apple created the Apple Devices and the iOS that ran these devices; (ii) had exclusive knowledge of material facts that were not known to Plaintiff; and (iii) made representations regarding the Apple Devices' administrative, technical, and physical measures taken to safeguard [purchaser's] personal safety but that Apple Maps would lead consumers to unknown, sometimes dangerous places.

112.    Plaintiff and members of the Class were deceived by Apple's representations and cultivation of its reputation for security and innovation and reasonably relied on Apple's representations and omissions as described herein and were consequently injured as alleged herein.

113.    Plaintiff and members of the Class have suffered injuries as a direct and proximate result of Apple's unlawful, unfair and fraudulent business practices.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation

Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

114.    Apple claims to review each application before offering it to its users, purports to have implemented app standards, and claims to have created measures to protect the personal safety of its customers.

115.    However, unbeknownst to consumers such as Plaintiff, Apple failed to properly monitor app makers and to provide accurate mapping information to Plaintiffs. In making these representations to Plaintiff and the Class, Apple intended to induce Plaintiff and the Class to purchase the Apple Devices.

116.    At all times herein, Plaintiff and the Class were unaware of the falsity of Apple's statements. Plaintiff and the Class reasonably acted in response to the statements made by Apple when they purchased an Apple device and updated the operating systems.

117.    As a proximate result of Apple's negligent misrepresentations, Plaintiff and Class members purchased Apple Devices.

## VIII.   <u>DEMAND FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, as applicable, pray for judgment and relief as follows as appropriate for the above causes of action:

A.      An order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

B.      A temporary, preliminary and/or permanent order for injunctive relief enjoining Apple from pursuing the policies, acts and practices complained of herein;

C.      A temporary, preliminary and/or permanent order for injunctive relief requiring Apple to undertake an informational campaign to inform members of the general public as to the wrongfulness of Apple's practices; and

D.      An award of actual, statutory and/or exemplary damages, as appropriate for the particular Causes of Action;

E.      An order requiring disgorgement of Apple's ill-gotten gains by requiring the payment of restitution to Plaintiff and members of the Class, as appropriate for the particular Causes of Action;

F.      Reasonable attorneys' fees;

G.      All related costs of this suit;

H.      Pre- and post-judgment interest; and

I.      Such other and further relief as the Court may deem necessary or appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Dated: November 15, 2013.


BY: /s/ Gregory D. Wolflick
    Gregory D. Wolflick
    WOLFLICK & SIMPSON
    130 North Brand Blvd., Suite 410
    Glendale, California 91203
    818.243.8300
    818.243.0122  - Facsimile

/s/ Donald W. Stewart
Donald W. Stewart (*Pro Hac Vice* pending)
STEWART & STEWART, P.C.
P.O. Box 2274
Anniston, Alabama 36202
(256) 237-9311
(256) 237-0713 – Facsimile

/s/ J. Paul Lynn
J. Paul Lynn (*Pro Hac Vice* pending)
STEWART & STEWART, P.C.
1826 3rd Avenue North, Suite 300
Bessemer, AL 35020
(205) 425-1166
(205) 425-5959 - Facsimile

*Counsel for Plaintiffs*